**Ken WHEATEN and Peter Albanese, Plaintiffs,**

**v.**

**MATTHEWS HOLMQUIST & ASSOCIATES, INC., Peter Matthews, Paul Holmquist, Scott Flynn, Tom A. Calise, Financial Corporation of America, Inc., and Tac & Associates, Inc., Defendants.**

No. 94 C 1134.

United States District Court, N.D. Illinois, Eastern Division.

July 12, 1994.

Fay Clayton, Robinson, Curley & Clayton, P.C., Michael A. Childers, Robinson Curley & Clayton, Chicago, IL, for Ken Wheaten, Peter Albanese.

Jeffry Mark Henderson, Henry Karl Becker, Patrick Gerard King, Henderson & Becker, Chicago, IL, for Matthews Holmquist & Associates, Inc., Peter Matthews, Paul Holmquist.

Phillip Leon Stern, Derek J. Meyer, Freeman, Freeman & Salzman, P.C., Chicago, IL, David A. Orenstein, Parsinen, Bowman & Levy, Minneapolis, MN, for Scott Flynn.

Jack P. Rimland, Michael Joseph Barton, Jr., Chicago, IL, for Tom A. Calise, Tac & Associates, Inc.

Joseph Michael Fitzsimmons, Matthew Thomas Caruso, Fitzsimmons, Roberts & Paine, Oakbrook Terrace, IL, for Financial Corp. of America, Inc.

Diane Christine Fischer, Michael Alan Kraft, Siegan, Barbakoff, Gomberg & Kane, Ltd., Chicago, IL, for Frank Albanese.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Before the Court is Defendant Financial Corporation of America, Inc.'s ("FCA") Motion for Summary Judgement. FCA asserts that it is entitled to judgement as a matter of law on Counts I, II and IV of the Complaint which are the only counts directed against FCA.

### FACTUAL BACKGROUND

In their Complaint, Plaintiffs allege that on or about April 2, 1993, Defendant Tom Calise, a registered representative with Defendant Matthews Holmquist & Associates Inc., contacted Plaintiff Peter Albanese to sell Albanese a block of 14,000 shares of insider Excalibur Stock. (Complaint at ¶ 14.) Calise allegedly told Albanese that the prior owner of the stock was a corporate insider who had defaulted on a loan to a bank and that the insider had given the bank the stock in lieu of a payment on the loan. *Id.* Additionally, Calise told Albanese that even though the stock was restricted, it would become unrestricted and trade freely on the over-the-counter market no later than October 15, 1993. *Id.* According to the Complaint, the block of 14,000 shares of insider Excalibur stock was being offered by Defendant Scott Flynn, an officer and director of Matthews Holmquist, and FCA. *Id.* at ¶ 15. On April 2, 1993, Albanese, per Calise's instructions, wired $77,000 to an account, in an Arkansas bank in the name of "Financial Corporation of America," as payment for insider Excalibur stock. *Id.* at ¶ 16. Albanese never received a prospectus for the stock, a confirmation of his purchase or the stock certificates evidencing ownership. *Id.* at ¶ 17.

Based on the above facts, Count I alleges that FCA violated Section 12(1) of the Securities Act of 1933, 15 U.S.C. § 77*l* (1) when it sold insider Excalibur stock to Albanese, by use of the means of interstate commerce and the mails, in violation of the registration and prospectus delivery requirements of Section 5 of the Securities Act (15 U.S.C. 77e). *Id.* at ¶¶ 30–31.) In Count II, Plaintiffs assert that FCA violated Section 12(2) of the Securities Act, 15 U.S.C. § 77*l* (2), which affords a private right of action to a purchaser against his seller where the purchaser acquired the securities by means of a prospectus or oral communication which contained a material misstatement or omission. *Id.* at ¶¶ 36–38. Finally, Count IV alleges that FCA violated Section 12(F) and (G) of the Illinois Securities Act of 1953, 815 ILCS 5/12, when FCA (1) engaged in a transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser thereof, and (2) obtained money through the sale of securities by means of an untrue statement of material fact, and omissions of material fact necessary in order to make the statements made, in the light of the circumstances, not misleading. *Id.* at ¶ 51.

In support of its Motion for Summary Judgement, FCA relies on the Section 4(1) Exemption of the Securities Act of 1933. FCA asserts that, as it is not an issuer, underwriter or dealer as defined in the Securities Act of 1933, FCA's purchase and sale of the Excalibur stock was exempt from the requirements of Section 12(1) and Section 12(2) of the Securities Act of 1933.

### ANALYSIS

Summary judgement is appropriate if the pleadings, answers to interrogatories, affidavits and other materials show "that there is no genuine issue as to any material fact and the parties are entitled to judgement as a matter of law." Fed.R.Civ.P. 56(c). Summary judgement shall be entered against a party who "fails to make a showing sufficient

to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The showing made by the non-moving party must be more than merely colorable. Summary judgement is appropriate "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ Plaintiffs argue first that FCA is not entitled to summary judgement because it did not comply with Local Rule 12(m). Local Rule 12(m) requires movants for summary judgement to "serve and file in addition to the affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a statement of the material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgement as a matter of law...." Local Rule 12(m). "If the moving party does not comply, the motion may be lost: 'Failure to submit such a statement constitutes grounds for denial of the motion.'" *Schulz v. Serfilco, Ltd.,* 965 F.2d 516, 517 (7th Cir.1992) (citing Local Rule 12(m)). As FCA has failed to submit a statement of material facts as to which FCA contends there is no genuine issue and which entitle FCA to judgement as a matter of law, this Court agrees with Plaintiffs that FCA is not entitled to summary judgement. Additionally, this Court notes that FCA has not filed a memorandum of law in support of its Motion for Summary Judgement nor a brief in reply to Plaintiff's response. FCA does not cite a single case in its Motion for Summary Judgement and its only reference to any legal authority is its citation to Section 4(1) of the Security Act of 1933.

FCA argues that this Court should grant FCA judgement as a matter of law on Counts I and II of the Complaint because FCA is not an issuer, underwriter or dealer and thus, under Section 4(1), exempt from the requirements of Sections 12(1) and 12(2) of the Securities Act of 1933. Section 4(1) of the Securities Act of 1933 provides that, "The provisions of section 77e of this title shall not apply to transactions by any person other than an issuer, underwriter or dealer." 15 U.S.C. § 77d(1). Thus, Section 4 exempts certain transactions, by a person other than an issuer, underwriter or dealer, from the requirement that a registration statement be effective before selling securities. *Pacific Dunlop Holdings, Inc. v. Allen & Co. Inc.,* 993 F.2d 578, 585 (7th Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 907, 127 L.Ed.2d 98 (1994), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 1146, 127 L.Ed.2d 454 (1994).

Sections 12(1) and (2) of the Securities Act of 1933 state in relevant part,

Any person who—

(1) offers or sells a security in violation of section 77e of this title or

(2) offers or sells a security ... by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known of such untruth or omission, shall be liable to the person purchasing such security from him[.]

15 U.S.C. § 77*l* (1) and (2). Essentially, Section 12 provides a cause of action to a purchaser against a seller who sells a security without an effective registration statement or who sells a security based on false information in a prospectus or oral communication. *See, Pacific Dunlop Holdings,* 993 F.2d at 585.

■ In opposition to FCA's Motion for Summary Judgement, Plaintiffs contend that FCA is not entitled to Section 4(1)'s exemption from the requirements of Section 12(1) because there is a genuine issue of fact with regard to whether FCA is an underwriter. The statute defines underwriter in Section 2(11) as "any person who has purchased from

an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security." 15 U.S.C. § 77b(11). In deciding whether FCA is an underwriter, this Court should consider that the Section 4(1) exemption is meant to distinguish "between distribution of securities and trading in securities." *Ackerberg v. Johnson,* 892 F.2d 1328, 1335 (8th Cir.1989) (citing L. Loss & J. Seligman, 2 Securities Regulation 627 (3d ed. 1989) (citing H.R.Rep. No. 85, 73d Cong., 1st Sess. 15 (1933))). *See also, S.E.C. v. Holschuh,* 694 F.2d 130, 137 (7th Cir.1982) (stating that Section 4(1) was created to exempt routine trading transactions with respect to securities already issued and not to exempt distributions by issuers or acts of others who engage in steps necessary to such distributions.) Congress intended "underwriter" to "cover all persons who might operate as conduits for the transfer of securities to the public." *Ackerberg,* 892 F.2d at 1335 (citing T. Hazen, The Law of Securities Regulation § 4.24 at 141 (1985) (citing H.R.Rep. No. 85, 73d Cong., 1st Sess. 13–14 (1933))).

 This Court agrees with Plaintiff that FCA is not entitled to judgement as a matter of law on Count I because a genuine issue of fact exists as to whether FCA is an "underwriter" defined by the statute as one who purchases securities "with a view toward distribution." 15 U.S.C. § 77b(11). If FCA purchased the Excalibur stock with an investment purpose and not for purpose of reselling the stock, then FCA's acquisition was not made "with a view toward distribution." *Ackerberg,* 892 F.2d at 1336. To determine the purpose of the acquisition courts look to whether the purchaser has held the securities long enough to negate any inference that his intention at the time of the acquisition was to resell and whether the subsequent sale of the stock involves a public offering. *Id.*

It is not clear from the attached materials when FCA purchased the securities from Excalibur. However, Plaintiffs attach a letter of investment intent signed by Phil Flynn, Vice President and Secretary of FCA, and transmitted to Excalibur on May 7, 1993. *See,* Exhibit D. In the letter of investment intent, Phil Flynn acknowledges that the

shares of Excalibur, held by FCA, were not registered under the Securities Act and were issued in transactions exempt from such registration. *Id.* FCA further represents that it acquired the shares for investment not distribution purposes and that it had no present plans to sell, pledge or otherwise transfer its 26,000 shares or to enter into any contract or arrangement to sell, pledge or otherwise transfer such shares. *Id.* Interestingly, a month prior to the transmittal of its letter of investment intent, FCA sold 14,000 shares of its Excalibur stock on April 2, 1993, to Albanese for $77,000. *See,* Exhibit C. Given the language of its letter of investment intent and the sale of 14,000 shares of Excalibur stock to Albanese a month prior, this Court finds that a reasonable jury could conclude that FCA purchased the Excalibur stock for the purpose of reselling it. Based on the materials submitted, this Court concludes that FCA did not hold the stock long enough to negate any inference that its intention at the time of the acquisition was to resell.

Whether the resale of the Excalibur stock to Plaintiff Albanese involved a "distribution" as defined by Section 2(11) depends on whether the resale of the Excalibur stock involved a public offering. *Ackerberg,* 892 F.2d at 1336. In *Ackerberg,* the Eighth Circuit relied on the explanation provided by the Second Circuit, in *Gilligan, Will & Co. v. SEC,* 267 F.2d 461, 466 (2d Cir.), *cert. denied,* 361 U.S. 896, 80 S.Ct. 200, 4 L.Ed.2d 152 (1959), for the connection between "underwriter," "distribution" and "public offering." The *Gilligan* court stated, "[s]ince § 2(11) ... defines an 'underwriter' as 'any person who has purchased from an issuer with a view to ... the distribution of any security' and since a 'distribution' requires a 'public offering,' ... the question is whether there was a 'public offering.'" 267 F.2d at 466 (citing H.R.Rep. No. 1838, 73d Cong., 2d Sess.1934).

 "Public offering" is not defined in quantitative terms, but in terms of whether the offerees are in need of the protection which the Securities Act provides through registration. *Ackerberg,* 892 F.2d at 1337. *See also, Van Dyke v. Coburn Enterprises, Inc.,* 873 F.2d 1094, 1098 (8th Cir.1989). As

the purpose of the Securities Act is to protect investors by ensuring full disclosure of information thought necessary to make an informed investment decision, an offering to an investor who is able to fend for himself is not a public offering and thus not a distribution. *Ackerberg,* 892 F.2d at 1337; *Van Dyke,* 873 F.2d at 1097.

■ FCA presents no evidence to suggest that Albanese was a sophisticated investor able to fend for himself, and thus that the sale of Excalibur stock to Albanese was not a public offering and therefore not a distribution. FCA appears to rely only on a letter written by the law firm of Freer & Alagia at the request of Excalibur regarding the transfer of 26,000 shares of Excalibur to FCA. *See,* Exhibit 3. The Freer & Alagia letter, dated May 9, 1993, states that FCA is neither a "dealer" nor an "issuer" as those terms are defined by the Securities Act of 1933. *Id.* The letter also states that, as FCA has executed a letter indicating that it is acquiring the Excalibur shares for its own account, and not with a view toward distribution, FCA is also not an "underwriter" as that term is defined by the statute. *Id.*

Contrary to FCA's suggestion, the Freer & Alagia letter does not preclude the existence of a genuine issue of material fact regarding whether FCA is an underwriter as defined by the statute. First, this Court notes that Freer & Alagia based its opinion that FCA was not an underwriter on the fact that FCA had signed a letter of investment intent stating that it purchased the Excalibur shares for its own account and not with a view toward distribution. *Id.* As previously mentioned, FCA's representations in its letter of investment intent are called into doubt by the fact that FCA sold 14,000 shares of Excalibur to Plaintiff Albanese a month prior to the execution of its letter of investment intent. Second, the Freer & Alagia letter specifically warns that all Excalibur stock purchased by FCA should bear a legend stating that such shares have not been registered and may not be transferred without registration or an opinion of Excalibur's counsel that registration is not required. *Id.* Thus, the Freer & Alagia letter indicates that no subsequent sale of the Excalibur stock could occur without prior registration. As FCA has not shown that there is no genuine issue of fact regarding its status as an underwriter, the Section 4(1) exemption does not entitle FCA to judgement as a matter of law on Count I of the Complaint alleging a violation of Section 12(1) of the Security Act of 1933.

■ With regard to Count II of the Complaint alleging a violation of Section 12(2), FCA's suggestion that Section 4(1)'s exemption entitles FCA to judgement as a matter of law is contrary to the law of this circuit. In *Pacific Dunlop Holdings Inc. v. Allen & Co. Inc.,* 993 F.2d 578, 587 (7th Cir.1993), the Seventh Circuit explicitly held that Section 4 exemptions do not apply to Section 12(2). The *Pacific Dunlop* court stated,

> Section 4 begins with the phrase "The provisions of Section 5 shall not apply to...." If Congress had wanted the section 4 exemptions to apply to section 12(1) and 12(2) alike, Congress simply could have begun section 4 by stating, "The provisions of *sections 5 and 12* shall not apply to...." The courts have consistently held that the section 4 exemptions do not apply to section 12(2).

993 F.2d at 587 (emphasis in original).

As FCA has not complied with Local Rule 12(m) and the Section 4(1) exemption does not entitle FCA to judgement as a matter of law, FCA's motion for summary judgement is denied without prejudice.

**CONCLUSION**

For the foregoing reasons, FCA's motion for summary judgement is denied without prejudice.